ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| DR. NOEL SANTOS MONTES, ET. ALS.<br><br>Parte Peticionaria<br><br>v.<br><br>HOSPITAL DOCTOR SUSONI INCORPORADO<br><br>Parte Recurrida | TA2026CE00675 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso núm.: AR2020CV01571<br><br>Sobre:<br>Ley de Corporaciones |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 5 de junio de 2026.

El 27 de mayo de 2026, el Dr. Raúl F. Rivera De La Vega (el Dr. Rivera De La Vega o el peticionario) presentó ante nos un recurso de *Certiorari* y una *Moción urgente en auxilio de jurisdicción* en la que solicitó que revoquemos la *Orden* emitida y notificada el 7 de mayo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario).[1]

En el aludido dictamen, el foro primario ordenó que, la cónyuge supérstite del señor Raúl Rivera Roldán compareciera en el pleito en aras de que ratifique el acuerdo presentado ante el TPI entre el peticionario y el Hospital Doctor Susoni Incorporado (parte recurrida).

En igual fecha, emitimos una *Resolución* en la que ordenamos la paralización de los procedimientos ante el TPI hasta tanto esta Curia emitiera un dictamen.

---

[1] Entrada núm. 205 del caso núm. AR2020CV01571 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida.

**I.**

El caso de autos tiene su origen cuando el 18 de diciembre de 2020, el peticionario y el Dr. Noel Santos Montes presentaron una *Demanda* en la que alegó que, el 18 de agosto de 2020, fusionaron a HDSI Merger Sub Inc., con el Hospital Doctor Susoni Incorporado.[2] Ante ello, el 25 de agosto de 2020, el peticionario y el Dr. Noel Santos Montes fueron notificados sobre dicha fusión, tras ser accionistas de la parte recurrida. Así, el peticionario y el Dr. Noel Santos Montes solicitaron al amparo de la Sección 10.15 de la *Ley General de Corporaciones*, Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, 14 LPRA sec. 3745 (Ley Núm. 164-2009) toda vez que, recibirían una cantidad contraria a sus intereses. Por otra parte, argumentaron que, la Junta de Directores de la parte recurrida actuó en beneficio sobre estos y no considerando los socios minoritarios por lo que procedía la acción derivativa. Consecuentemente, solicitó la paralización de cualquier transferencia.

Así las cosas, el 17 de agosto de 2021, el TPI emitió y notificó una *Sentencia Parcial* en la que desestimó, con perjuicio, la causa de acción sobre acción derivativa.[3] Empero, mantuvo la causa de acción sobre el avalúo.

Tras diversos trámites procesales, el 30 de marzo de 2026, las partes presentaron una *Moción conjunta informativa sobre aceptación de oferta de Sentencia y solicitud de término para someter documentos finales* en la que informaron que, el 26 de febrero de 2026, la parte recurrida le cursó una Oferta de Sentencia en virtud

---

[2] Entrada núm. 1 del caso núm. AR2020CV01571 en el SUMAC.
[3] Entrada núm. 69 del caso núm. AR2020CV01571 en el SUMAC.

de la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 35.1, al peticionario y el Dr. Noel Santos Montes.[4] Ambas partes adujeron que, el 3 de marzo de 2026, el Dr. Noel Santos Montes y el peticionario aceptaron la Oferta de Sentencia. Consecuentemente, las partes solicitaron un término de cinco (5) días para someter los documentos relacionados a la Oferta de Sentencia.

El 6 de abril de 2026, el foro primario emitió una *Orden* en la que concedió el término solicitado por ambas partes.[5]

En cumplimiento, el 17 de abril de 2026, ambas partes instaron una *Moción informativa y en solicitud de que se tomen en conocimiento, se adopten por referencia dos estipulaciones confidenciales, se dicte sentencia conforme a sus términos y se retenga jurisdicción* en el que informaron que, anejaron y firmaron los documentos relacionados a la Oferta de Sentencia.[6] En lo pertinente, el peticionario aceptó la suma de $297, 542.36 para resolver en forma "total, final y definitiva la causa de acción de avalúo pendiente".[7] En la mencionada moción, las partes reconocieron que, el peticionario recibe la cuantía aceptada debido a que la acción sujeta a avalúo pertenecía a su padre. No obstante, este tiene legitimación para retirar la cuantía consignada puesto que anejó una escritura de Compraventa de acciones suscrita en el 1999 que, la Sucesión del señor Raúl Rivera Roldán le vendió al peticionario una acción adscrita a la corporación Hospital Doctor Susoni Inc.[8]

En igual fecha, el foro primario emitió y notificó una *Sentencia* en la que declaró Con Lugar la *Moción informativa y en solicitud de que se tomen en conocimiento, se adopten por referencia dos*

---

[4] Entrada núm. 196 del caso núm. AR2020CV01571 en el SUMAC.
[5] Entrada núm. 198 del caso núm. AR2020CV01571 en el SUMAC.
[6] Entrada núm. 199 del caso núm. AR2020CV01571 en el SUMAC.
[7] Entrada núm. 199 del caso núm. AR2020CV01571 en el SUMAC, pág. 2.
[8] Por los hechos ocurrir durante la vigencia del derogado Código Civil de 1930, 31 LPRA sec. 1, *et. seq*, es de aplicación el citado estatuto.

*estipulaciones confidenciales, se dicte sentencia conforme a sus términos y se retenga jurisdicción* y decretó el desistimiento, con perjuicio, del caso.[9] Empero, el TPI retuvo jurisdicción sobre el pleito.

Ante ello, el 4 de mayo de 2026, la parte recurrida radicó una *Moción sometiendo escrito confidencial* en la que le notificó al *foro a quo* que consignó la cuantía acordada con el peticionario en el TPI.[10]

El 7 de mayo de 2026, el foro primario emitió una *Orden* en la que dado a que las acciones vendidas al peticionario tienen carácter ganancial, el Dr. Rivera De La Vega debía presentar un documento fehaciente que acredite la cesión de los intereses de la cónyuge supérstite del señor Raúl Rivera Roldán al peticionario.[11] Ello, puesto que en la escritura de compraventa de intereses la cónyuge del señor Raúl Rivera Roldán compareció en calidad de albacea de la sucesión.

Insatisfecho, el 11 de mayo de 2026, el peticionario instó una *Moción para solicitar reconsideración* en la que reiteró que, la compraventa fue suscrita con autorización judicial firme y la cónyuge del señor Raúl Rivera Roldán compareció como albacea testamentaria.[12] Por tanto, solicitó que, ordene la liberación de los fondos consignados por la parte recurrida.

Al día siguiente, el peticionario presentó una *Moción subsidaria y sin perjuicio de la Moción de reconsideración: solicitud para que se dicte orden al Lcdo. Manuel Martínez Umpierre, como notario autorizante, a fin de gestionar, ratificar y expedir nuevo juramento y otorgamiento de la compraventa de acciones, en lo que se resuelve la reconsideración* en la que inquirió que el foro primario emita una Orden dirigida al Notario para que gestione, redacte,

---

[9] Entrada núm. 201 del caso núm. AR2020CV01571 en el SUMAC.
[10] Entrada núm. 203 del caso núm. AR2020CV01571 en el SUMAC.
[11] Entrada núm. 205 del caso núm. AR2020CV01571 en el SUMAC.
[12] Entrada núm. 207 del caso núm. AR2020CV01571 en el SUMAC.

autorice y juramente el instrumento subsanatorio o de ratificación.[13]

El 12 de mayo de 2026, el TPI remitió una *Orden* en la que razonó que, el *foro a quo* no puede disponer de la controversia sin la comparecencia de cónyuge supérstite del señor Raúl Rivera Roldán.[14] El TPI entendió que, en virtud de que la cónyuge compareció como albacea en representación de la Sucesión del señor Raúl Rivera Roldán, puede tener un interés económico en dichas acciones. Por tanto, tras considerar que la cónyuge supérstite es parte indispensable, se declaró No Ha Lugar la *Moción para solicitar reconsideración*. En adición, ordenó que el peticionario presentara dentro del término de veinte (20) días algún documento que acreditara la cesión de derechos de la cónyuge supérstite en su participación de dichas acciones.

Ese mismo día, el *foro a quo* emitió una *Orden* con relación a la *Moción subsidaria y sin perjuicio de la Moción de reconsideración: solicitud para que se dicte orden al Lcdo. Manuel Martínez Umpierre, como notario autorizante, a fin de gestionar, ratificar y expedir nuevo juramento y otorgamiento de la compraventa de acciones* en la que determinó que "[e]l tribunal puede aceptar cualquier documento notarizado por el licenciado Lcdo. Manuel Martínez Umpierre dirigido a cumplir con la orden, más la determinación de la señora Wanda Santiago Soto es completamente voluntaria dado que no es parte en el pleito y nada ha dispuesto el tribunal en contra de ella".[15]

Inconforme, el 27 de mayo de 2026, el peticionario presentó un *Certiorari* en el que coligó los siguientes errores:

> Primer error: Erró el foro recurrido al condicionar el desembolso de fondos previamente consignados, bajo apercibimiento de relevo de los efectos de una Sentencia Final firme, a la presentación de un "documento fehaciente

---

[13] Entrada núm. 208 del caso núm. AR2020CV01571 en el SUMAC.
[14] Entrada núm. 209 del caso núm. AR2020CV01571 en el SUMAC.
[15] Entrada núm. 210 del caso núm. AR2020CV01571 en el SUMAC.

que acredite la cesión de los intereses de la viuda... en su participación ganancial sobre dichas acciones", en contravención a la doctrina dispositiva del Tribunal Supremo que estatuye que la cuota del cónyuge supérstite en la comunidad post-ganancial es abstracta sobre el totum y nunca concreta sobre activos individualizados.

Segundo error: Erró el foro recurrido al ignorar que la autorización judicial firme dictada en *Wanda Santiago Soto, Ex Parte*, Civil Núm. CJV96-0274, configura la tercera vía con que el ordenamiento agota plenamente el consentimiento individualizado exigible respecto de la disposición de bienes específicos sujetos a comunidad post-ganancial y hereditaria; y al ejecutar, casi tres décadas después y motu proprio, un ataque colateral sobre dicha Resolución firme.

Tercer error: Erró el foro recurrido al ignorar que el principio de subrogación real, reiteradamente reconocido por el Tribunal Supremo, desplazó por imperativo de ley toda pretensión patrimonial sobre la acción al precio recibido en el negocio dispositivo de 1999.

Cuarto error: Erró el foro recurrido al adoptar una premisa que, de prevalecer, tornaría defectuosa la notificación de la fusión corta cursada por la corporación recurrida el 25 de agosto de 2020, expondría a la corporación a una reclamación adicional de avalúo cuasi-judicial por una supuesta tenedora de récord omitida, activaría el cómputo retroactivo de intereses bajo el Art. 10.13(I) y de costas y honorarios bajo el Art. 10.13(J) de la Ley General de Corporaciones, 14 LPRA secs. 3782(I) y (J), y comprometería la integridad de toda la reorganización corporativa derivada de aquella fusión.

Quinto error:  Erró el foro recurrido al soslayar post-firmeza los términos expresos de una Estipulación Conjunta que constituye transacción judicial bajo el Art. 1715 del Código Civil de 1930, 31 LPRA ant. sec. 4827, y que las propias partes acordaron como prueba suficiente de la titularidad del peticionario (acompañando la Compraventa de Acciones de 1999 como Anejo A "a los fines de evidenciar y acreditar la titularidad"); todo ello en contravención del efecto preceptivo y de cosa juzgada que la Regla 35.1 de Procedimiento Civil, el Art. 1715 del Código Civil de 1930, y la doctrina del Tribunal Supremo en *Citibank v. Dependable Ins. Co.*, 121 D.P.R. 503 (1988), y *Neca Mortg. Corp. v. A & W Developers*, 137 D.P.R. 860 (1995), atribuyen a la sentencia que aprueba una estipulación, sin invocar la Regla 49.2 ni identificar fundamento taxativo alguno.

En cumplimiento con nuestra *Resolución*, el 1 de mayo de 2026, la parte recurrida radicó un *Memorando en cumplimiento de orden del Hospital Doctor Susoni Incorporado.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver la expedición del auto de *certiorari.*

**II.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004-1005 (2021); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). Véase, además, *IG Builders et al v. BBVAPR*, 185 DPR 307, 337 (2012); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc, supra; Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Cónsono con lo anterior, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone en lo pertinente lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un

segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso. En aras de ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, Regla ___ del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, 216 DPR __ (2025), dispone los criterios a considerar para poder atender o no las controversias ante su consideración. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). Véase, *Rivera et al. v. Arcos Dorados et al., supra*; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Los criterios que debemos considerar son los siguientes:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty, supra*, pág. 97. Ahora bien, este Tribunal de Apelaciones puede expedir el auto de certiorari cuando "se recurra de decisiones

sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos que revistan interés público o cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Rivera et al. v. Arcos Dorados et al., supra,* pág. 195.

**B.**

La oferta de sentencia es un mecanismo procesal para reducir los costos de la litigación civil, adelantar la pronta disposición de las reclamaciones judiciales y reducir la carga de los Tribunales. *Ortiz Muñoz v. Rivera Martínez,* 170 DPR 869, 878 (2007); *Ramallo Brothers v. Federal Express Corp.,* 129 D.P.R. 499 (1991). Su propósito es fomentar las transacciones. *HUCE de Ame. v. V. & E. Eng. Const.,* 115 D.P.R. 711 (1984). La Regla 35.1 de Procedimiento Civil rige lo relacionado a la oferta de sentencia. Dicha regla postula lo siguiente:

> En cualquier momento antes de los veinte (20) días precedentes al comienzo del juicio, la parte que se defiende de una reclamación podrá notificar a la parte adversa una oferta para consentir a que se dicte sentencia en su contra por la cantidad, por la propiedad o en el sentido especificado en su oferta, con las costas devengadas hasta ese momento. La oferta deberá cumplir con los requisitos siguientes:
> (1) Hacerse por escrito, notificando a la parte a quien se le hace mediante correo certificado.
> (2) Especificar quién hace la oferta y la parte a la que va dirigida.
> (3) Establecer la cantidad, si alguna, que se ofrece en concepto de daños. (4) Especificar la cantidad total o propiedad y condiciones ofrecidas.
> (5) Establecer la cantidad en concepto de costas devengadas hasta el momento.

"La oferta de sentencia es una proposición escrita dirigida a la parte reclamante, mediante la cual el demandado o la parte contra la cual se reclama se allana a que se dicte sentencia en su contra bajo los términos expuestos en la oferta". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed, Lexis Nexis (2017). No obstante, no toda oferta de transacción constituye una oferta de sentencia. *Ortiz Muñoz v. Rivera Martínez, supra,* pág.

878. Con ello, cuando el demandante formalice una oferta de transacción, que no se defienda de una reclamación, no constituye una oferta de sentencia en virtud de la Regla 35.1 de Procedimiento Civil, *supra*. Por tanto, el rechazo de una oferta realizada por el demandante acarrea la imposición de costas, gastos y honorarios de abogado. *Ortiz Muñoz v. Rivera Martínez, supra*, pág. 879. En fin, a través de una oferta de sentencia, la parte que se defiende una reclamación está de acuerdo en que se dicte sentencia en su contra por una cuantía ofrecida. *Ortiz Muñoz v. Rivera Martínez, supra*, pág. 879.

## C.

El Art. 823 del derogado Código Civil de 1930, 31 LPRA sec. 2520, establece que, un albacea "tendrán todas las facultades que expresamente les haya conferido el testador, y no sean contrarias a las leyes". En ausencia de algún encargo específico por el causante, el Art. 824 del derogado Código Civil de 1930, *supra* ant. sec. 2521, establece que serán las siguientes:

> (1) Disponer y pagar los sufragios y el funeral del testador con arreglo a lo dispuesto por él en el testamento; y en su defecto, según la costumbre del pueblo.
> (2) Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.
> (3) Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.
> (4) Tomar las precauciones necesarias para la conservación y custodia de los bienes, con intervención de los herederos presentes.

Un albacea deberá rendir cuentas a los herederos sobre su encargo. Art. 829 del derogado Código Civil de 1930, *supra* ant. sec. 2526; *Tous Rodriguez v. Tous Oliver*, 212 DPR 686 (2023). El Tribunal Supremo ha reiterado que:

> Aunque el testador no le confirió facultades de administración [al albacea, este] tiene aquellas facultades que podrían llamarse secundarias o instrumentales, que sean necesarias para el ejercicio de las otorgadas por el testador o para su normal utilización, entre las que se encuentran: la de vigilar sobre la efectividad de las facultades que el testador le concedió en el testimonio y sostener siendo justo, la validez del deseo del testador en juicio y fuera de él, a los fines de que pueda llevar a cabo su cometido y la

facultad adicional de tomar las precauciones necesarias para la conservación y custodia de los bienes con intervención de los herederos presentes, hasta el momento que la herencia del causante sea entregada al fiduciario.

*Tous Rodriguez v. Tous Oliver, supra,* pág. 701 citando a: *Ab Intestato Marini Pabón,* 107 DPR 433, 438–439 (1978).

El albacea ostenta un rol de administración que responde a la voluntad del testador, la cual podría ser ejecutado por los herederos de no haber albacea. *Tous Rodriguez v. Tous Oliver, supra,* pág. 701; Art. 833 del derogado Código Civil, *supra* ant. sec. 2530.

**D.**

Como parte de la función notarial, los abogados y notarios deben cumplir con lo dispuesto en el Código de Ética Profesional, la Ley Notarial y el Reglamento Notarial. *In re Radducci Caro,* 213 DPR 587 (2024). Su incumplimiento conlleva la imposición de severas sanciones disciplinarias. *In re Radducci Caro, supra,* pág. 600; *In re Maldonado de Jesús,* 208 DPR 601, 611 (2022). La fe púbica notarial es la espina dorsal del sistema notarial. *In re Radducci Caro, supra,* pág. 600; *In re Maldonado de Jesús,* 208 DPR 601, 611 (2022). De la fe notarial emana la presunción controvertible de legalidad, corrección y exactitud, formal y sustantiva, sobre la cual reviste un documento que ha sido autorizado por un notario. *In re Radducci Caro, supra,* pág. 600. Un documento notarial avalado por la dacion de fe "brinda la confianza de que los hechos jurídicos y las circunstancias acreditadas en efecto fueron percibidos o comprobados por el notario". *In re Radducci Caro, supra,* pág. 601; *In re González Pérez,* 208 DPR 632, 645–646 (2022); *In re Villalona Viera,* 206 DPR 360, 370 (2021).

**III.**

De entrada, resaltamos que, no atenderemos el cuarto señalamiento de error debido a que no guarda relación con la *Resolución* recurrida.

En el caso de epígrafe, el peticionario argumentó que, el foro primario erró en no hacer valer la oferta de sentencia presentada entre las partes tras condicionar el desembolso de una acción, hasta tanto no presente un documento fehaciente sobre su titularidad con respecto a dicha acción. Ello, pese a que el peticionario es titular de dicha acción en virtud de que suscribió una escritura de compraventa con la albacea, la cónyuge supérstite, de la Sucesión del señor Raúl Rivera Roldán.

Tras un examen sosegado del expediente ante nos, y en correcta práctica apelativa, colegimos que no debemos abstenernos de ejercer nuestra función revisora y, debemos intervenir con la determinación del foro primario.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

La figura del albacea es una persona encargada sobre la administración de los bienes del causante conforme su voluntad testamentaria. En lo pertinente, cuando el testador no haya expresado las labores del albacea, este se limitará a vigilar la ejecución de las disposiciones testamentarias y tomar las medidas necesarias para la conservación de los bienes, con la presencia de los herederos. Dicha administración de bienes le correspondería a los herederos, en ausencia de un albacea.

Por otro lado, ante un documento notarial existe la presunción de legalidad, corrección y exactitud, sobre un documento que ha sido autorizado por un notario. *In re Radducci Caro, supra.* Con ello, un documento notarial, la dación de fe brindada por el notario da confianza sobre la constancia de hechos jurídicos y circunstancias acreditadas ante un notario.

Al respecto, en el caso ante nos, el peticionario y la cónyuge supérstite del señor Raúl Rivera Roldán, en calidad de albacea, suscribieron una compraventa sobre la venta de una acción de la

parte recurrida, en calidad de corporación. Ciertamente, un notario dio fe sobre la venta judicial y la autorización que tenia la cónyuge, en calidad de albacea para realizar la venta judicial. Es decir, el TPI debió descansar en la fe notarial, espina dorsal de nuestro derecho, en virtud de que un notario dio fe en cuanto a que la cónyuge estaba autorizada como albacea para autorizar la venta de la acción en cuestión. En adición, el notario acreditó a través de la fe notarial que el peticionario tenía capacidad para comprar la acción y la cónyuge estaba autorizada para realizar dicha venta. Ante ello, las partes consintieron y se perfeccionó la venta de la acción. Igualmente, los albaceas están autorizados a realizar acciones para el beneficio de la administración de los bienes sujetos a la sucesión de un causante. A esos fines, el foro primario debió descansar en la fe notarial en virtud de que surge de la escritura de la venta de intereses que, el notario tuvo ante sí prueba y hechos suficientes para determinar que procedía dar fe de la compraventa de las acciones. Es forzoso concluir que, el TPI fue oneroso en ordenar documentación adicional y la comparecencia de la cónyuge supérstite toda vez que, esta consintió y tenía potestad para autorizar la venta de intereses. A su vez, bastaba con la presentación de la escritura de compraventa de intereses para cerciorarse que el peticionario tenía capacidad para tomar decisiones y aceptar fondos por la acción que ostentaba. Ello, al palio de que se desprende de la escritura que un notario dio fe sobre la capacidad de las partes para perfeccionar la compraventa del interés en cuestión.

A la luz de lo anterior, esta Curia revoca la *Resolución* recurrida debido a que el TPI tiene ante sí la documentación necesaria para asegurarse que, el peticionario es dueño de la acción en controversia. Nos resulta oneroso, que la cónyuge supérstite acuda ante un pleito sobre le cual no es parte indispensable puesto

que como albacea de la Sucesión del señor Raúl Rivera Roldán vendió dicha acción.

**IV.**

Por los fundamentos que anteceden, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida. Devolvemos el caso ante el foro primario para que resuelva conforme a lo aquí resuelto. Igualmente, dejamos sin efecto nuestra *Resolución* en la que ordenamos la paralización de los procedimientos ante el TPI.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones